UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE R. KEEN,<br><br>               Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>               Defendant. | Case No. C15-5107-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Stephanie R. Keen seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by finding her not fully credible and improperly weighing the medical evidence, thereby leading to an invalid assessment of her residual functional capacity and an erroneous finding that she was not disabled; she seeks a remand for an award of benefits. Dkt. 19. For the reasons discussed below, the Court recommends the case **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

Ms. Keen is currently 33 years old, has a high school education, and has worked as a retail sales clerk, childcare worker, auto parts dispatcher, and waitress/short-order cook. Tr. 51, 120, 146-47. On March 15, 2010, she applied for benefits, alleging disability as of July 3, 2009. Tr. 120, 122. After her applications were denied initially and on reconsideration, the ALJ held a

REPORT AND RECOMMENDATION - 1

hearing and issued an unfavorable decision, which the Appeals Council declined to review. Tr. 1, 9-24. Ms. Keen sought review before this Court, and the parties stipulated to a remand for further proceedings. *See* Case No. C13-346-RAJ. After holding a second hearing, the ALJ issued the final decision at issue in this case on October 22, 2014. Tr. 662-82.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Ms. Keen had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: obesity, bilateral knee impairment, chronic lower back pain, left hip impairment, fibromyalgia, depressive disorder not otherwise specified (NOS), anxiety disorder NOS, personality disorder NOS, and opiate dependency; and that these impairment did not meet or equal the requirements of a listed impairment.[2] Tr. 665-66. The ALJ found that Ms. Keen had the residual functional capacity to perform light work except that she can occasionally kneel, crouch, crawl, or climb stairs; she should avoid concentrated exposure to hazards, particularly unprotected heights, and she is limited to occasional interaction with coworkers and the public. Tr. 668. The ALJ found that although Ms. Keen was not able to perform any of her past relevant work, there were jobs that exist in significant numbers in the national economy that she could perform. Tr. 681. The ALJ therefore found her not disabled. Tr. 682.

## DISCUSSION

**A.   The ALJ's credibility assessment**

Ms. Keen argues that the ALJ erred in finding her not fully credible. Dkt. 19 at 2. Because the ALJ did not find that Ms. Keen was malingering, he was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ gave several reasons for finding Ms. Keen not fully credible, including that she was able to work despite her longstanding impairments; the lack of supporting objective evidence for both her mental and physical complaints; her activities since July 2009 which indicated that she was able to persist with physical activity and prolonged sitting and walking, and that she could maintain concentration and tolerate occasional social contact; and that her opiate dependence has likely added to her functional difficulties. Tr. 669-74.

   *1. Opiate-seeking behavior*

   Ms. Keen challenges the ALJ's reliance on her opiate-seeking behavior as detracting from her credibility. Dkt. 19 at 4. Ms. Keen does not dispute that a claimant's drug-seeking behavior can be a valid reason to discount her credibility. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007). Ms. Keen instead argues that the ALJ does not cite to the record in support of his finding that "her opiate-seeking behavior and violations of her pain contract detract from her credibility regarding her pain symptoms and indicate that these symptoms have been exaggerated to some degree for the purpose of receiving opiate narcotics." Tr. 674. However, several pages before this finding, the ALJ detailed Ms. Keen's opiate-seeking behavior and violations of her treatment agreement, including taking narcotic medications she obtained from friends, multiple reports of lost or stolen medications, seeking narcotics from multiple providers, and failure to disclose her prescription opiates. Tr. 670, 672-73. The ALJ found as part of that discussion that Ms. Keen's "credibility concerning her pain symptoms are otherwise compromised by her violations of a pain contract regarding her receipt of opiates." Tr. 672. The

REPORT AND RECOMMENDATION - 3

ALJ was not required to repeat this discussion when again noting his finding that Ms. Keen's opiate-seeking behavior and violations of her pain contract detracted from her credibility.

Ms. Keen also argues that the ALJ ignored the fact that Dr. Balkany continued to prescribe opiates despite Ms. Keen's violations of her pain contract and, by doing so, the ALJ improperly acted as a medical expert. Dkt. 19 at 4. She cites to the rule that the ALJ may not reject a doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his opinion with his own observations. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-2000 (9th Cir. 2008). However, the issue at hand is Ms. Keen's credibility, not the validity of an opinion expressed by Dr. Balkany. The fact that Dr. Balkany continued to prescribe opiates to Ms. Keen despite violations of her treatment agreement does not mean that the ALJ cannot consider her drug-seeking behavior as an issue of credibility. Moreover, some of her drug-seeking behavior, such as seeking narcotics from multiple providers, involved providers other than Dr. Balkany. Ms. Keen's drug-seeking behavior was a valid reason to question her credibility.

*2.    Work history*

The ALJ found that Ms. Keen's psychological impairments, back impairment, chronic pain complaints, and opiate dependence did not prevent fulltime work at the light level. Tr. 669. The ALJ noted that Ms. Keen dislocated both of her knees in 1998, she reported the existence of chronic back pain since the late 1990s and anxiety and depression since childhood, and she has been taking opiates since 2007, yet she was gainfully employed on a consistent basis between 2000 and 2006 and again from 2008 to 2009. *Id.*

An ALJ may properly consider a claimant's ability to work in the past despite alleged impairments. *See, e.g.*, *Crosby v. Comm'r of Social Sec. Admin.*, 489 Fed. Appx. 166, 168 (9th

REPORT AND RECOMMENDATION - 4

Cir. 2012) (affirming an ALJ's adverse credibility determination based on the fact that, *inter alia*, the claimant's "longstanding conditions did not preclude work in the past"); *Porter v. Astrue*, 403 Fed. Appx. 226, 228 (9th Cir. 2010) (affirming an ALJ's adverse credibility determination where the evidence showed that the claimant "worked with essentially the same deficits for one employer for a number of years"). Ms. Keen argues, particularly with respect to the ALJ's reliance on this as a reason to reject medical opinions, that the ALJ's finding that she could work with her impairments is not supported by substantial evidence. Dkt. 19 at 11.

Ms. Keen asserts that her work in 2008 and 2009 as a childcare assistant was part time, not full time as the ALJ found. Dkt. 19 at 12. She points to her statement in a September 2008 examination that she was working part time and was unable to meet the physical demands of full time work. Tr. 231. But the ALJ relied Ms. Keen's report on a Disability Report form completed in March 2010 that she worked 8 hours a day, 5 days a week as a daycare assistant from September 2008 through July 2009. Tr. 147, 669. In addition, Ms. Keen also reported in an October 2010 examination that she started her day care work part-time and gradually worked into a full time position. Tr. 237. The evidence about the nature of her work in 2008 and 2009 is conflicting. It is the ALJ's responsibility to resolve conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Because there is substantial evidence to support the ALJ's finding that Ms. Keen's work as a childcare provider was full time, the Court may not overturn it in favor of an alternative finding. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Ms. Keen argues that the evidence indicates that her mental functioning deteriorated with her loss of medical insurance after previously accessing coverage, and that she reported that her anxiety and depression interfered with her ability to work. Dkt. 19 at 12. She also points out

REPORT AND RECOMMENDATION - 5

that she suffered an injury while riding an all-terrain vehicle in April 2010 and she had two knee surgeries after the first hearing. Dkt. 19 at 13. She argues that this evidence undermines the ALJ's finding that her impairments did not previously prevent her from working. Dkt. 19 at 13.

Even though Ms. Keen argues that her impairments worsened after her alleged onset date—in some cases years later—she does not dispute the fact that these impairments were in fact longstanding and she was able to work with them for many years. Any changes that occurred after her alleged onset date would be a factor to consider in evaluating her residual functional capacity, but would not negate the fact that the impairments did not prevent her from working in the past. For this reason, the ALJ did not err by finding that her ability to work despite her impairments in the past undermined her credibility.

Ms. Keen also argues that because the ALJ found that she could not perform her prior work, the fact that she worked with anxiety in the past is not a convincing reason to find that she could work now. Dkt. 19 at 13. But, again, the ALJ's finding is that Ms. Keen's claim that she cannot work due to anxiety and her other longstanding impairments is inconsistent with her ability to work despite these impairments in the past. The ALJ did not err in finding that Ms. Keen's work history shows that she was able to work despite her impairments in the past.

    *3.    Ms. Keen's activities*

Ms. Keen challenges the ALJ's reliance on her activities since the alleged onset date. Dkt. 19 at 3. The ALJ found that Ms. Keen's activities since her alleged onset date indicate that she was able to persist with physical activity and prolonged sitting and walking, and that she could tolerate at least occasional social contact. Tr. 674. The ALJ noted activities such as Ms. Keen's report in April 2010 that she planned to take a trip to Minnesota by plane, and in October 2009 that she got some books from the library to read. *Id.* The ALJ also noted that Ms. Keen

REPORT AND RECOMMENDATION - 6

reported in October 2010 that she was paying her rent by performing daily housekeeping for the friend she lived with and she otherwise reported cooking several times per week, using public transportation, and operating motor vehicles; in December 2010 she stated that she felt her pain symptoms might be due to walking all day; and in March 2011, she reported walking multiple times per week as exercise. *Id.*

An ALJ may consider a claimant's daily activities when evaluating her credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). But contradictions between a claimant's reported activities and his asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ has not explained how the activities he identified were more than attempts to live a normal life in the face of limitations or how they undermine Ms. Keen's claims. For example, Ms. Keen reported that she was planning the trip to Minnesota to attend to a gravely ill family member. Tr. 431. But the record contains no further information about the trip—whether she needed accommodations, the effects of traveling on her impairments, how she fared during the trip. Ms. Keen reported that she got some books from the library to read. Tr. 257. But there is nothing in the record to show that she went to the library or read books in a manner inconsistent with her reported limitations. Similarly, Ms. Keen reported that it took her all day to perform the cleaning she did to pay her rent. Tr. 508. The ALJ did not explain how this contradicted her allegations or would be transferrable to a workplace. Without more, the mere fact that she travelled by plane, checked out books from the library, cleaned her apartment, or performed other activities does not undermine her credibility. This was not a valid reason to find Ms. Keen not fully credible.

REPORT AND RECOMMENDATION - 7

*4.  Objective evidence*

Ms. Keen also challenges the ALJ's finding that a lack of supporting objective evidence detracts from her credibility. Dkt. 19 at 5. Although lack of objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Ms. Keen argues that the ALJ failed to specifically identify how the objective evidence he described undermined her statements, selectively ignored abnormal findings that were contrary to his conclusions, and included misstatements of the record. Dkt. 19 at 5-9.

Ms. Keen first points out that the ALJ relied on several Washington State DSHS psychological evaluations that included opinions that Ms. Keen had marked limitations and was unable to work. She argues that because the ALJ rejected these opinions elsewhere in the decision, it was unreasonable for him to rely on them as evidence that undermined her credibility. Dkt. 19 at 5. The ALJ rejected the DSHS evaluations for various reasons, including that the opinions expressed in them were vague, conclusory, or unsupported by the examiners' findings. Tr. 677-80. These findings do not preclude the ALJ from considering the information contained in these evaluations for other purposes.

Ms. Keen argues that the ALJ selectively relied on the objective evidence, ignoring findings contrary to his conclusions other than to mention their presence. Dkt. 19 at 5-9. While an ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the ALJ discussed the objective evidence in relation to Ms. Keen's credibility over the course of five pages, noting both normal and abnormal findings. Tr. 669-73. Ms. Keen lists numerous

additional findings, both normal and abnormal, that she asserts the ALJ should have included. Dkt. 19 at 5-9. But the ALJ considered and discussed all the reports Ms. Keen cites to, even if he did not mention the particular findings Ms. Keen identifies. The ALJ's detailed discussion and consideration of the objective evidence was more than sufficient to permit review. The ALJ's failure to discuss the evidence in exactly the manner Ms. Keen would have preferred is not error.

Ms. Keen also argues that the ALJ merely summarized the objective evidence and failed to specifically connect it to the statements he found it to undermine. Dkt. 19 at 9. The ALJ identifies conflicts between Ms. Keen's hearing testimony and the evidence at various points. For example, the ALJ found: "Contrary to her hearing testimony, the claimant's physical impairments do appear to have been instrumental to her departure from employment in June 2009." Tr. 670. The ALJ later finds that the medical records "indicate a lack of credibility regarding her physical functioning following an injury in mid-2010." Tr. 671. The ALJ provided more than a mere summary of the medical evidence.

The objective evidence contains findings that support and that detract from the credibility of Ms. Keen's claims. Where the evidence is susceptible to more than one interpretation, it is the ALJ's interpretation that the Court must uphold. *Thomas*, 278 F.3d at 954. Here, the ALJ evaluated and synthesized the objective evidence, finding that it did not support Ms. Keen's subjective claims. Because this interpretation is supported by substantial evidence, the Court should uphold it.

5.   *Harmless error*

The ALJ erroneously considered Ms. Keen's activities in determining her credibility. However, because the ALJ provided other clear and convincing reasons to discount the credibility of Ms. Keen's allegations, the inclusion of the improper reason among other proper

REPORT AND RECOMMENDATION - 9

reasons is harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).  The ALJ's adverse credibility determination should be affirmed.

### B.     Medical opinions

Ms. Keen argues that the ALJ improperly weighed the medical opinions, resulting in a residual functional capacity finding that failed to include all her limitations.  Dkt. 9 at 10.  In general, the ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor.  *Lester*, 81 F.3d at 830.  The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion.  *Id.*

Ms. Keen first argues that the ALJ erred in relying on her work history, her activities since her alleged onset date, and her longitudinal examination findings in rejecting the medical opinions, relying on her previous arguments about these issues.  Dkt. 19 at 11.  The Court has addressed these arguments above and need not do so again here, except to note that the ALJ's error in relying on Ms. Keen's activities since July 2009 remains harmless.

*1.     Adam Balkany, D.O.*

Dr. Balkany treated Ms. Keen from December 2010 through the date of the decision.  In June 2011 he opined that with respect to her physical residual functional capacity, Ms. Keen could walk 1 to 2 blocks before needing to rest, she could sit or stand for 15 minutes at a time and for less than 2 hours total in an 8-hour workday, she would need to walk around for 5 minutes every 20 minutes, she could rarely lift less than 10 pounds and never lift more than 10 pounds, she could never stoop, crouch, climb ladders, or climb stairs, and she would be absent

more than 4 days per month due to her impairments or treatment.  Tr. 566-70.  The ALJ gave this opinion little weight, finding that Dr. Balkany used as the basis for this opinion his initial evaluation of Ms. Keen and made no reference to clinical findings or objective findings, referring only to Ms. Keen's symptoms of pain and fatigue.  Tr. 675.  The ALJ found that Ms. Keen's ability to work at the light level with her impairments, her activities, and the examination findings were inconsistent with Dr. Balkany's opinion while the overall evidence indicates minimal credibility regarding pain symptoms.  *Id.*

An ALJ may give less weight to a doctor's opinion that is brief, conclusory, and inadequately supported by medical records.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Dr. Balkany reported that he had seen Ms. Keen monthly for the eight months before he gave this opinion, but the only record he referred to in this opinion was his initial evaluation.  Tr. 566.  This lack of support was a valid reason to reject the opinion.  The only other basis Dr. Balkany cited for his opinion was Ms. Keen's subjective complaints.  An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  This was also a valid reason to give the opinion less weight.

In March 2014 Dr. Balkany opined that Ms. Keen was limited to sedentary work due to knee pain, back pain, hip pain, and fibromyalgia, and that this impairment had been ongoing since 1998.  Tr. 980-82.  The ALJ gave minimal weight to this opinion, finding that Dr. Balkany did not explain the basis for his opinion except to refer to range of motion testing, in which Ms. Keen displayed full or nearly full range of motion in some areas, with some deficits in others. Tr. 676.  The ALJ again noted Ms. Keen's ability to work at the light level despite her impairments and chronic pain symptoms.  *Id.*  The ALJ further found that even if she could

perform only sedentary work, the Medical-Vocational guidelines would direct a finding of not disabled, even with her additional physical and mental limitations. *Id.*

Ms. Keen argues that the record includes treatment notes from Dr. Balkany that document more than just abnormal range of motion, including tenderpoint testing, and that, because Dr. Balkany had been treating her for almost four years at the time he gave this opinion, these treatment notes should be considered in evaluating the opinion. Dkt. 19 at 15. However, Dr. Balkany did not indicate that he relied on anything other than the range-of-motion testing as the basis for this opinion. The ALJ was not required to find support for the opinion that Dr. Balkany himself did not rely on. The ALJ did not err by finding the opinion to be conclusory and inadequately supported. *See Bayliss*, 427 F.3d at 1216.

In June 2011, Dr. Balkany opined that with respect to her mental residual functional capacity, Ms. Keen had an unlimited ability to understand, remember, and carry out simple instructions and to maintain attention for two-hour segments, and a limited but satisfactory ability to maintain regular attendance, sustain an ordinary routine, get along with others, and be aware of normal hazards. Tr. 573. He opined that she was seriously limited and/or unable to meet competitive standards in her ability to make simple work-related decision, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace, accept instructions or respond to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with normal work stress. *Id.* He opined that she was unable to ask simple questions or request assistance. *Id.* When asked to explain the limitations and include the clinical findings that support his assessment, Dr. Balkany wrote that Ms. Keen "has tendency to follow, not take initiative, due to paralyzing fear/anxiety. She lacks ability to implement, can only respond . . . has exhibited passive-aggressive tendencies

REPORT AND RECOMMENDATION - 12

that highlight that noted above." *Id.*

The ALJ gave minimal weight to this opinion, except to agree that Ms. Keen has an unlimited ability to concentrate for two-hour intervals and to understand and carry out simple instructions. Tr. 679. The ALJ found that Dr. Balkany's explanation for his opinion was vague and conclusory and provided an inadequate basis for the degree of psychological disability he asserted. *Id.* The ALJ also found that it was inconsistent with Ms. Keen's activities, the longitudinal findings since 2009, and with Dr. Balkany's own treatment notes, which did not document these findings. *Id.* Ms. Keen asserts that the ALJ's finding that this opinion is vague and conclusory is unsupported, essentially arguing that Dr. Balkany's explanation is clear and his treatment notes do in fact support it. Dkt. 19 at 16. But Ms. Keen merely argues for an alternative interpretation of Dr. Balkany's explanation and the treatment notes. Because the ALJ's interpretation is rational, and because an ALJ may reject a conclusory and unsubstantiated opinion, the Court should not disturb this finding.

The ALJ did not err in evaluating Dr. Balkany's opinions and this Court should affirm the ALJ's decision to give them little weight.

   2.   *Luci Carstens, Ph.D.*

Luci Carstens, Ph.D., evaluated Ms. Keen several times. In October 2009, she opined that Ms. Keen had no cognitive limitations and mild or moderate social limitations due to anxiety, depression, and emotional difficulties. Tr. 241. The ALJ gave this opinion some weight, finding that Ms. Keen's work history, longitudinal examination findings, and activities indicate minimal to no impact in cognitive functioning, with some limits to her social interactions in an occupational setting. Tr. 677. The ALJ found that Dr. Carstens's opinions about moderate limitations were conclusory and unsupported, but that the work identified by the

REPORT AND RECOMMENDATION - 13

vocational expert would accommodate these moderate limitations. *Id.*

Ms. Keen argues that the ALJ ignored the parts of Dr. Carstens's exam that supported the limitations she opined. Dkt. 19 at 18. Even if this is true, the ALJ found that the moderate limitations Dr. Carstens opined were accommodated by the residual functional capacity finding and the vocational expert's testimony. Any error in rejecting the moderate limitations was therefore harmless.

In October 2011, Dr. Carstens again evaluated Ms. Keen and opined that she had no limitations in her ability to understand, remember, and persist with simple instructions; mild impairment in her ability to understand, remember, and persist with complex instructions and to learn new tasks; moderate impairment in her ability to perform routine tasks without undue supervision and to be aware of normal hazards; and marked limitations in her ability to communicate and perform effectively in a work setting with even limited public contact and to maintain appropriate behavior in a work setting. Tr. 905. The ALJ gave this opinion minimal weight, except to agree that Ms. Keen had minimal to no limitations in her ability to learn or persist with instruction. Tr. 680. The ALJ found that while Dr. Carstens referred to objective examination findings to support her assessment of mild or no limitations, she provided only vague and conclusory recitals of Ms. Keen's symptoms and alleged limitations to support her assessment of moderate to marked limitations. *Id.* The ALJ found that the Personality Assessment Inventory (PAI) administered by Dr. Carstens raised possible concerns about exaggeration of symptoms. *Id.* And the ALJ found that Ms. Keen's longitudinal exam findings, history of working despite her longstanding psychological issues, and activities since July 2009 were inconsistent with the moderate and marked limitations Dr. Carstens expressed. *Id.*

Ms. Keen argues that the ALJ ignored all of Dr. Carstens's abnormal findings and

REPORT AND RECOMMENDATION - 14

included only her normal findings. Dkt. 19 at 18. But the ALJ did not ignore the abnormal findings. Instead, he noted where Dr. Carstens supported her opinions with objective findings and where she did not. For example, in finding mild limitations, Dr. Carstens referred to the mental status examination results; in finding moderate or marked limitations, she referred to "high stress levels" and "low frustration tolerance." Tr. 906. The ALJ validly rejected these opinions as conclusory and unsupported.

Ms. Keen argues that the ALJ misstated the record when finding that the PAI results raised possible concerns about symptom exaggeration. Dkt. 19 at 19. Dr. Carstens found that given Ms. Keen's responses, "it is possible that the clinical scales may overrepresent or exaggerate to some extent the actual degree of psychopathology reflected in the PAI," but "on the other hand, profile patterns of this type are typically associated with marked distress and, unless there is extensive distortion or exaggeration of symptomatology, severe impairment in functioning is typically present." Tr. 907. The ALJ did not err by noting the "possible concerns" in Ms. Keen's PAI results that Dr. Carstens herself discussed.

Ms. Keen argues for an alternative interpretation of Dr. Carstens's opinion. But because the ALJ's interpretation is rational, and because the ALJ gave specific and legitimate reasons for rejecting portions of the opinion, this Court should not disturb the ALJ's assessment.

Dr. Carstens evaluated Ms. Keen a third and fourth time in August 2012 and June 2013. In August 2012, Dr. Carstens opined that Ms. Keen had mild or no limitations in her ability to understand, remember, and persist in tasks by following simple instructions, maintain attendance, perform routine tasks without supervision, make simple work-related decisions, be aware of hazards, and ask questions or request assistance; moderate limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, learn new tasks,

REPORT AND RECOMMENDATION - 15

1  and set realistic goals; and marked limitations in her ability to adapt to changes in a routine work
2  setting, communicate and maintain appropriate behavior in a work setting, and complete a
3  normal work day and work week without interruptions from psychologically based symptoms.
4  Tr. 920.  In June 2013, Dr. Carstens opined that Ms. Keen had mild or no limitations in her
5  ability to understand, remember, and persist in tasks by following simple or detailed instructions,
6  maintain attendance, learn new tasks, perform routine tasks without supervision, make simple
7  work-related decisions, or ask questions or request assistance; she had moderate limitations in
8  her ability to be aware of hazards and set realistic goals; and she had marked limitations in her
9  ability to adapt to changes in a routine work setting, communicate and maintain appropriate
10 behavior in a work setting, and complete a normal work day and work week without
11 interruptions from psychologically based symptoms.  Tr. 925.

12      The ALJ gave these opinions some weight, as the overall evidence indicated minimal or
13 no impairment in her abilities to ask simple questions, make simple decisions, learn new tasks,
14 perform routine tasks, maintain attendance, and understand and persist at simple or detailed
15 instructions.  Tr. 680.  The ALJ further found that Dr. Carstens stated no basis for these opinions,
16 her examinations of Mr. Keen were generally benign, and the opinions of moderate to marked
17 limitations were inconsistent with Ms. Keen's work history, her activities since July 2009, and
18 her longitudinal exam findings.  Tr. 680-81.

19      Ms. Keen argues that the ALJ selectively relied on findings that supported his
20 conclusions and ignored the findings that detract from them.  Dkt. 19 at 20-21.  But, again, the
21 ALJ is not required to discuss each and every piece of evidence.  *Vincent*, 739 F.2d at 1394-95.
22 The ALJ again noted where Dr. Carstens supported her opinions with objective findings and
23 where she did not.  The lack of support was a valid reason to reject the opinions.

REPORT AND RECOMMENDATION - 16

1    The ALJ did not err in evaluating Dr. Carstens's opinions and this Court should affirm
2 the ALJ's decision to give them little weight.

3    3.    *Geordie Knapp, Psy.D.*

4    Geordie Knapp, Psy.D., examined Ms. Keen in October 2010. He opined that she had
5 mild limitations in her ability to care for herself or to follow simple instructions; moderate
6 limitations in her ability to maintain appropriate behavior, learn new tasks, or follow complex
7 instructions; and marked limitations in her ability to perform routine tasks, make decisions,
8 interact appropriately in public, relate appropriately to coworkers, or to tolerate the expectations
9 of a normal work setting.  Tr. 509.  The ALJ gave minimal to no weight to this opinion.  Tr. 678.
10 The ALJ found that Dr. Knapp gave "notably vague, conclusory, and contradictory explanations
11 for his findings."  *Id.*  The ALJ noted several examples of these contradictions, such as that Dr.
12 Knapp explained his finding that Ms. Keen would have moderate difficulties with complex
13 instructions by stating that Ms. Keen had "no problem with [mental status exam], she would
14 likely be able to learn most reasonable tasks."  *Id.*  The ALJ also found that Dr. Knapp's opinion
15 was inconsistent with Ms. Keen's work history, treatment records, activities, and longitudinal
16 examination findings.  *Id.*

17    Ms. Keen argues that the ALJ erred by rejecting the opinion because the ALJ isolated the
18 normal findings and ignored the abnormal findings.  Dkt. 19 at 22.  But, again, the ALJ focused
19 on the lack of support for and contradictions between Dr. Knapp's findings and his opinions.
20 This was a valid reason to reject the opinion.  The ALJ did not err in giving the opinion minimal
21 to no weight.

22    3.    *Kristen Roessler, MA, LMHC*

23    In June 2011, treating therapist Kristen Roessler, MA, LMHC, opined that Ms. Keen had

REPORT AND RECOMMENDATION - 17

limited but satisfactory abilities to get along with coworkers, maintain appropriate behavior, ask simple questions, sustain an ordinary routine, and carry out simple instructions; she had serious limitations in her ability to be aware of normal hazards, respond appropriately to changes in routine, accept instructions and respond appropriately to criticism, perform at a consistent pace, make simple decision, complete a normal workday, work in coordination with or proximity to other people, maintain attention in two-hour segments, carry out detailed instructions, and remember work-like procedures; she was unable to meet competitive standards regarding stress tolerance, attendance, or making independent plans; and she would be absent from work for four or more days per month. Tr. 563-64. The ALJ gave this opinion minimal weight, finding that it was conclusory and contained only vague references to symptoms such as "regular attendance is severely impacted by symptoms," that when Ms. Roessler was asked to identify clinical findings to support her opinions Ms. Roessler wrote only "All life domains are impacted by severity of anxiety & emotion irregularities." Tr. 679. The ALJ further found that Ms. Roessler's opinion was inconsistent with Ms. Keen's work history, activities since July 2009, and longitudinal examination findings since July 2009. *Id.* And the ALJ noted that Ms. Roessler is not an acceptable medical source and had no documented treatment records for Ms. Keen. *Id.*

Ms. Keen argues that the fact that Ms. Roessler is not an acceptable medical source is not a valid reason to reject her opinion. Dkt. 19 at 22. The ALJ must give germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources, including the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well

REPORT AND RECOMMENDATION - 18

the source explains the opinion, and whether the source has a specialty or area of expertise related to the impairment. SSR 06-03p; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ did not err by considering Ms. Roessler's status as a non-acceptable medical source in giving her opinion less weight.

Ms. Keen argues that with respect to the lack of treatment records, the ALJ had a duty to develop the record, noting that she reported her counseling treatment in her function reports. Dkt. 19 at 22-23. The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). This duty is triggered only when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the evidence from Ms. Roessler was neither ambiguous nor inadequate to allow for proper evaluation—it was merely unsupported by treatment records. Moreover, the Social Security Administration repeatedly requested records from Ms. Roessler, but received no response. Tr. 69, 74, 476. The ALJ had no duty to develop the evidence from Ms. Roessler.

Ms. Keen argues in her reply that even without supporting treatment records, Ms. Roessler's opinion provides explanation for the limitations assessed. Dkt. 24 at 8. But the ALJ's finding that Ms. Roessler referred to no clinical findings is supported by substantial evidence. Ms. Roessler repeatedly stated that Ms. Keen's symptoms would impact her functioning, without further explanation. This was also a valid reason to give the opinion less weight.

The ALJ gave specific, germane reasons to give Ms. Roessler's opinion minimal weight. This Court should not disturb his assessment of the opinion.

REPORT AND RECOMMENDATION - 19

   *4.   Reviewing physicians*

Ms. Keen argues that the ALJ erred by giving the most weight to reviewing physicians who have never examined or treated Ms. Keen.  Dkt. 19 at 23.  The opinion of a non-examining doctor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of a treating doctor.  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  But the ALJ did not rely solely on the reviewing doctors' opinions to reject the opinions of the treating and examining doctors.  Rather, the ALJ gave specific and legitimate reasons for rejecting in whole or in part the doctors' opinions discussed above.  For this reason, this Court should not disturb the ALJ's weighing of the medical opinions.

## CONCLUSION

The ALJ's decision is free of harmful legal error and supported by substantial evidence.  Accordingly, the Court recommends that the Commissioner's decision **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **January 4, 2016**.  If no objections are filed, the Clerk shall note the matter as ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of December, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20